UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MIGUEL ROBLES CORCUERA, | |
| Petitioner, | CIVIL ACTION NO. 3:26-CV-00084 |
| v. | (MEHALCHICK, J.) |
| CRAIG A. LOWE, et al., | |
| Respondents. | |

**MEMORANDUM**

Petitioner, Miguel Robles Corcuera ("Corcuera"), a Mexican national seeking asylum in the United States, brings this petition for writ of habeas corpus. (Doc. 1). On January 15, 2026, Corcuera filed the instant petition, requesting that the Court order his release from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or that Respondents Craig Lowe, Michael T. Rose, Todd M. Lyons, Kristi Noem, and Pamela Bondi[1] provide a bond hearing pursuant to *German Santos v. Warden Pike County Correctional*

---

[1] The government asserts that the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 6, at 1 n.1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Corcuera is detained at the Pike County Correctional Facility, Corcuera is the proper respondent. (Doc. 6, at 1 n.1); *see Rumsfeld*, 542 U.S. at 434. As such, all other respondents are **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Corcuera on behalf of ICE. *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 WL 3522932, at *8 (M.D. Pa. Nov. 13, 2025) (finding same).

*Facility*, 965 F.3d 203 (3d Cir. 2020). (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), the government filed a timely response to Corcuera's petition on January 22, 2026. (Doc. 6). On January 29, 2026, Corcuera filed a traverse. (Doc. 7). For the following reasons, Corcuera's petition (Doc. 1) is **GRANTED**.

I.     FACTUAL AND PROCEDURAL BACKGROUND

    The following background and factual summary are derived from Corcuera's petition and the exhibits thereto. (Doc. 1). Corcuera is a Mexican national, who left Mexico fearing for his life after he was kidnapped and severely beaten by gang members in Oaxaca. (Doc. 1, at 7). Corcuera entered the United States on April 10, 2023, and he was paroled into the country as an applicant for admission. (Doc. 1, at 7; Doc. 1-3). On September 30, 2023, New Jersey authorities arrested Corcuera on charges of aggravated assault and possession of a weapon. (Doc. 1-5). Corcuera allegedly hit a victim with an aluminum bat three times, causing injuries to the victim's head, arm, and leg. (Doc. 1-11, at 117, 119). On October 15, 2025, the Superior Court of New Jersey sentenced Corcuera to pay a fine for the amended charge of simple assault. (Doc. 1-15).

    On or about October 6, 2023, Corcuera was detained by U.S. Immigration and Customs Enforcement ("ICE") at the Moshannon Valley Processing Center in Phillipsburg, Pennsylvania. (Doc. 1, at 8). On December 1 and 15, 2023, Corcuera appeared before Immigration Judge Tamar Wilson ("IJ Wilson") at the Elizabeth Immigration Court and requested additional time to find an attorney. (Doc. 1, at 8). On January 12, 2024, Corcuera again asked IJ Wilson for additional time to find an attorney, but IJ Wilson did not respond to Corcuera's request for additional time and, instead, ruled on the pleadings. (Doc. 1, at 8). IJ Wilson determined that Corcuera was not eligible for asylum and ordered Corcuera

removed from the United States. (Doc. 1, at 8).

Corcuera reserved the right to appeal and retained counsel, who timely filed a Notice of Appeal on his behalf, asserting that the immigration court violated his Fifth Amendment right to counsel. (Doc. 1, at 9; Doc. 1-7, at 5-7). The Board of Immigration Appeals ("BIA") dismissed Corcuera's appeal on May 9, 2025. (Doc. 1, at 9). Corcuera then filed a petition for review and motion for stay of removal before the Third Circuit. (Doc. 1, at 9, Doc. 1-7). On August 22, 2024, the Third Circuit found that Corcuera demonstrated a violation of his right to counsel, granted the motion for stay of removal, and remanded the case to the BIA. (Doc. 1, at 9).

On July 12, 2024, Corcuera filed a motion for a custody redetermination hearing. (Doc. 1, at 9). However, at the hearing on July 19, 2024, Corcuera withdrew his bond request so his counsel could conduct research on the issue of whether the immigration court had jurisdiction to set bond. (Doc. 1, at 9). On November 1, 2024, Corcuera filed a subsequent motion for a custody redetermination hearing, and on November 6, 2024, the Immigration Judge Adrian Armstrong ("IJ Armstrong") found that the immigration court did not have jurisdiction to set bond, and even if it did, Corcuera was not eligible for release on bond because he is a danger and a flight risk. (Doc. 1, at 10; Doc. 1-12; Doc. 1-13). Corcuera filed a timely Notice of Appeal, and on January 31, 2025, the BIA dismissed Corcuera's bond appeal. (Doc. 1, at 10; Doc. 1-14). Corcuera also filed three parole requests with ICE via email on July 23, 2024; December 18, 2024; and November 20, 2025. (Doc. 1, at 10; Doc. 1-16; Doc. 1-17). ICE denied all three parole requests. (Doc. 1, at 10; Doc. 1-16; Doc. 1-17). To date, Corcuera has been detained for over twenty-seven months, since encountering ICE on October 6, 2023. (Doc. 1, at 2).

## II. LEGAL STANDARD

28 U.S.C. § 2241 governs a district court's power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan*, 385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if it determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the Due Process Clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Niell*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

## III. JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v.*

4

*Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, No. 25-2162, 2026 WL 111933, at *9 (3d Cir. Jan. 15, 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). Habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Khalil*, 2026 WL 111933, at *11 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). The question of whether a petitioner's detention has been unconstitutionally long is wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Khalil*, 2026 WL 111933, at *11-*12 (finding that length of confinement without a bond hearing claim "does not get channeled into the PFR review process"). Corcuera's petition is soundly before the Court as Corcuera filed the instant petition while detained within the jurisdiction of this Court, is still currently detained by ICE, and asserts that his continued detention violates due process. *See J. G. G.*, 604 U.S. at 672 (acknowledging that immigration-

5

related detainees' claims "fall within the 'core' of the writ of habeas corpus") (quoting *Nance,* 597 U.S. at 167); *see also Khalil,* 2026 WL 111933, at *11-*12.

IV. **DISCUSSION**

Corcuera requests that the Court release him from custody at the Pike County Correctional Facility or that the government provide him with a bond hearing. (Doc. 1). Corcuera contends that his prolonged mandatory detention under 8 U.S.C. § 1225(b) violates the Due Process Clause of the Fifth Amendment. (Doc. 1, at 14). Corcuera avers that his over twenty-seven months of mandatory civil detention without bond is extreme and unconstitutional. (Doc. 1, at 16). The government counters that Corcuera's detention does not violate due process because it is pursuant to a mandatory detention provision of § 1225(b) and has not been prolonged nor arbitrary. (Doc. 6, at 3). The government reasons that the Department of Homeland Security is lawfully detaining Corcuera for removal proceedings because he is an arriving alien who is a flight risk and danger to the community. (Doc. 6, at 11).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Due Process Clause of the Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). While it is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings, the Supreme Court has recognized that detention during deportation proceedings is a constitutionally valid aspect of the deportation process. *Demore v. Kimm,* 538 U.S. 510, 523 (2003). Detention of noncitizens pending their removal proceedings serves the purpose of preventing noncitizens from fleeing before or

6

during the removal proceedings. *Demore*, 538 U.S. at 528. However, the Due Process Clause limits detention without a bond hearing to a "reasonable period." *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 208 (3d Cir. 2020). Therefore, due process affords detained noncitizens a bond hearing once their detention becomes unreasonable. *Santos*, 965 F.3d at 211.

Corcuera is detained pursuant to 8 U.S.C. § 1225(b), which provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Under this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, and they may be released only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)). Two recent BIA decisions eliminated the availability of bond hearings for detainees under § 1225(b)(2)(A). *Matter of Q. Li*, 29 I. & N. Dec. 66 (BIA 2025) (holding an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and is subsequently placed in removal proceedings, is detained under § 1225 and is ineligible for any subsequent release on bond); *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025) (holding that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for bond hearings). Nevertheless, § 1225(b) detainees enjoy the same basic due process rights afforded to other classes of detained noncitizens, including the right to an individualized bond determination once the length of their detention before removal has become unreasonable. *Pierre v. Doll*, 350 F. Supp. 3d 327, 332-33 (M.D. Pa. 2018); *Destine v. Doll*, No. 3:17-CV-1340, 2018 WL 3584695, at *4 (M.D.

7

Pa. July 26, 2018) (collecting cases). To determine whether a noncitizen's detention has become unreasonable, courts evaluate four factors established by the Third Circuit in *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 211 (3d Cir. 2020): (1) the length of the detention; (2) whether the detention is likely to continue; (3) the reasons for any delay that prolongs detention; and (4) whether the noncitizen's conditions of confinement are meaningfully different from criminal punishment. The Court will consider each *Santos* factors in turn.

    A.  LENGTH OF DETENTION

Corcuera contends that his over twenty-seven months of continued civil imprisonment strongly supports a finding of unreasonable detention. (Doc. 1, at 24-25). The government counters that while Corcuera has been detained for over twenty-seven months, his detention has not been unreasonably lengthy because it has only been fourteen months since Corcuera's last bond hearing. (Doc. 6, at 12). The parties dispute whether the custody redetermination hearing on November 6, 2024 was a legally sufficient bond hearing that afforded Corcuera meaningful opportunity for release. (Doc. 7, at 4).

The Third Circuit has identified the first *Santos* factor, duration of detention, as the "most important factor" in evaluating the reasonableness of a noncitizen's detention during removal proceedings. *Santos*, 965 F.3d at 211. While the Third Circuit has not adopted a presumption of reasonableness or unreasonableness for any duration of detention, the Third Circuit has found that detention becomes increasingly suspect after five months. *Santos*, 965 F.3d at 211 (citing *Demore*, 538 U.S. at 515; *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011)). Given that the inquiry is fact-specific, courts have reached different conclusions as to the length of detention that qualifies as reasonable or unreasonable. *See Malede v. Lowe*,

No. 1:22-CV-01031, 2022 WL 3084304, at *5 (M.D. Pa. Aug. 3, 2022) (concluding that petitioner's "near 18-month detention has reached the tipping point when the length of the detention begins to weigh in favor of a bond hearing"); *see Davydov v. Doll*, No. 1:19-CV-2110, 2020 WL 969618, at *4 (M.D. Pa. Feb. 28, 2020) (concluding that a noncitizen who had been detained for over fourteen months was entitled to a bond hearing); *see also Crooks v. Lowe*, No. 1:18-CV-47, 2018 WL 6649945, at *2 (M.D. Pa. Dec. 19, 2018) (denying a bond hearing to a petitioner who had been detained for eighteen months because "his case ha[d] proceeded through the removal process at a reasonable pace and there [was] no indication on the record that the government ha[d] improperly or unreasonably delayed the proceedings"); *see also Santos v. Lowe*, No. 1:18-CV-1553, 2019 WL 1468313, at *3-4 (M.D. Pa. Apr. 3, 2019) (concluding that a noncitizen who had been detained for fifteen months was not entitled to a bond hearing). Courts in the Third Circuit generally find that detention for well over a year is sufficient to amount to an arbitrary deprivation of liberty. *See Rodriguez-Castillo v. Lowe*, No. 1:19-cv-1000, 2020 WL 820154, at *3 (M.D. Pa. Feb. 19, 2020) (collecting cases).

For a bond hearing to be legally sufficient, the Court must make an individualized inquiry into whether the noncitizen's detention is still necessary to fulfill the statute's purpose of ensuring the noncitizen attends removal proceedings and that his release will not pose a danger to the community. *Diop*, 656 F.3d at 231. The government bears the burden of proving that continued detention is necessary to fulfill the purposes of the detention statute. *Diop*, 656 F.3d at 233.

Corcuera has been continuously detained for over twenty-seven months, or over two years and three months of mandatory detention without opportunity for release on bond. (Doc. 1, at 23-24). Corcuera's length of detention is well over a year, which favors a finding

of unreasonable detention. *See Santos*, 965 F.3d at 211; *see Malede v. Lowe*, 2022 WL 3084304, at *5; *see Rodriguez-Castillo*, 2020 WL 820154, at *3 (collecting cases). The government contends that Corcuera's custody redetermination hearing on November 6, 2024, constituted a bond hearing. (Doc. 6, at 12). However, at the hearing, IJ Armstrong determined that the immigration court has no jurisdiction to make a bond determination because Corcuera was designated as an arriving alien and detained pursuant to § 1225(b). (Doc. 1-13, at 4). The only assessment IJ Armstrong conducted regarding Corcuera's eligibility for bond was a cursory finding in the alternative that Corcuera has not shown that he does not pose a danger to the community. (Doc. 1-13, at 4). Such a determination does not constitute an individualized inquiry into the reasonableness of Corcuera's detention and the effects of his release. *See Diop*, 656 F.3d at 231. Even if the clock for length of detention started after Corcuera's custody redetermination hearing on November 6, 2024, over fourteen months of detention is well over the Third Circuit's five-month tipping point and constitutes over a year of detention. *See Santos*, 965 F.3d at 211. Accordingly, the first *Santos* factor, duration of detention, weighs slightly in favor of unreasonable detention.

  B. L<small>IKELIHOOD OF</small> C<small>ONTINUED</small> D<small>ETENTION</small>

  Corcuera contends that there is no end in sight to his detention. (Doc. 1, at 25). Corcuera reasons that the Third Circuit's remand of the case after finding Corcuera was denied the right to counsel, restarts his removal hearing process from the beginning. (Doc. 1, at 26). Corcuera further submits that he likely faces many more months of detention, providing that the average length of detention when an appeal is taken is 382 days. (Doc. 1, at 26). The government counters that Corcuera is at the end of his litigation, and his removal order will likely become final in the near future. (Doc. 6, at 11, 15).

10

When a noncitizen's removal proceedings are unlikely to end soon, continued detention without a bond hearing weighs towards a finding of unreasonable detention. *Santos,* 965 F.3d at 211. Delays of undefined duration continue to accrue during the pendency of administrative proceedings that may be necessary following an appellate court decision. *Bah v. Doll*, No. 3:18-CV-1409, 2018 WL 6733959, at *8 (M.D. Pa. Oct. 16, 2018). In Corcuera's case, on October 15, 2025, the Third Circuit granted Corcuera's petition for review, vacated the BIA's order, and remanded to the BIA with instructions to remand to the Immigration Judge for a new hearing. (Doc. 1-7, at 7). The Third Circuit's decision only took effect on January 8, 2026, after the government did not file a timely petition for rehearing. (Doc. 1-6). A review of Corcuera's case information from Executive Office for Immigration Review[2] indicates that there are currently no future hearings set for Corcuera. At this time, the undersigned cannot determine how long Corcuera's removal proceedings will remain pending. However, as Corcuera has remained in detention for an additional month since the Third Circuit's decision took effect without any hearings scheduled in his removal proceeding, the second *Santos* factor weighs slightly in favor of a finding of unreasonableness. *See Santos,* 965 F.3d at 212, *see also Bah,* 2018 WL 6733959, at *8.

C. REASONS FOR DELAYS

Corcuera avers that the reasonable continuances and brief extensions he sought do not amount to bad faith reasons for delay, and that his detention can still be deemed unreasonable in the absence of governmental bad faith. (Doc. 1, at 27-28). The government contends that the third *Santos* factor should be deemed neutral because it has not intentionally delayed or

---

[2] Automated Case Information, Executive Office for Immigration Review, https://acis.eoir.justice.gov/en/caseInformation (last visited February 10, 2026).

11

unreasonably prolonged Corcuera's removal proceedings, which have moved forward at a normal rate. (Doc. 6, at 15).

In evaluating the third *Santos* factor, courts look at the reasons for the delay, such as a detainee's request for continuances or bad-faith errors in the removal proceedings that caused unnecessary delay. *Santos*, 965 F.3d at 211. Courts should not hold a noncitizen's good-faith challenge to removal against him, even when his appeals or petitions for review have drawn out the proceedings. *Santos*, 965 F.3d at 211. Courts should also decline to hold legal errors against the government unless there is evidence of carelessness or bad faith. *Santos*, 965 F.3d at 211. Nevertheless, detention can still grow unreasonable in the absence of governmental bad faith. *Santos*, 965 F.3d at 211.

Corcuera's removal proceedings have moved forward at a normal rate. The government has not demonstrated carelessness or bad faith that would cause unnecessary delay. *See Santos*, 965 F.3d at 212 (citing *Diop*, 656 F.3d at 224-25) (finding unnecessary delay where an immigration judge repeatedly issued decisions that were so unclear that they required remands for clarification and the government was slow to produce evidence relevant to whether petitioner was properly detained). The Court also will not hold Corcuera's reasonable requests for extensions of time to find counsel and Corcuera's appeal of IJ Wilson's removal decision against him. *See Santos*, 965 F.3d at 211. Accordingly, the reasons for the delay of Corcuera's removal proceedings are a neutral factor in weighing whether Corcuera's detention is unreasonable.

D. C<small>ONDITIONS OF</small> C<small>ONFINEMENT</small>

The parties agree that civil detention at the Pike County Correctional Facility is indistinguishable from criminal punishment, and the government concedes that this fourth

*Santos* factor weighs in favor of granting Corcuera a bond hearing. (Doc. 1, at 29; Doc. 6, at 15-16). To evaluate the conditions of confinement, courts examine whether the noncitizen's conditions of confinement are "meaningfully different" from criminal punishment. *Santos*, 965 F.3d at 211. If a noncitizen's civil detention under § 1225(b) looks penal, that shifts the scale towards finding the detention unreasonable. *Santos*, 965 F.3d at 211. The Third Circuit has previously found that the conditions of civil confinement at the Pike County Correctional Facility are indistinguishable from criminal punishment. *Santos*, 965 F.3d at 212-13; *White v. Warden Pike Cnty. Corr. Facility*, No. 23-2872, 2024 WL 4164269, at *2 (3d Cir. Sept. 12, 2024). Given the parties' agreement and the government's concession, the Court finds Corcuera's conditions of confinement to be indistinguishable from criminal punishment, weighing in favor of unreasonable detention.

Taking the four *Santos* factors together, Corcuera's detention has become unreasonable and violates due process. The appropriate remedy is for Corcuera to be afforded a bond hearing before an immigration judge under the standards set forth in *Santos*, in which the government bears the burden of proof to justify Corcuera's detention with clear and convincing evidence. *Santos*, 965 F.3d at 213; *see Clarke v. Doll*, 481 F. Supp. 3d 394, 398-99 (M.D. Pa. 2020) (finding an individualized bond hearing before an immigration judge to be the appropriate remedy for unconstitutionally lengthy detention).

V.   **C**ONCLUSION

For the foregoing reasons, Corcuera's petition for writ of habeas corpus (Doc. 1) is **GRANTED**. The Court **ORDERS** the government to provide Corcuera with an individualized bond hearing before an immigration judge within fourteen days, at which the government bears the burden of establishing by clear and convincing evidence that Corcuera's

13

continued detention is justified, in accordance with *German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203 (3d Cir. 2020). The parties shall report to the Court the outcome of the individualized bond hearing within seven days of the date of the immigration judge's hearing. If the immigration judge fails to convene an individualized bond hearing within fourteen days of the date of this order, the Court will reopen this case and consider conducting its own individualized bond hearing under the standards governing bail in habeas corpus proceedings.

      An appropriate Order follows.

BY THE COURT:

**Dated: February 11, 2026**

*/s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States District Judge**